### CHARLES F. MARSKEY v. CHARLES TURNER.

*Life insurance—Premium note—Consideration—Ratification—Agency.*

1. A life-insurance agent received a policy, to be delivered on payment of the premium, for which he took the note of the assured, payable to the order of the company, and delivered the policy. He indorsed the note in blank, and placed it in a

bank for collection. The assured became dissatisfied, and demanded his note, and offered to surrender his policy, which demand and offer were refused by the agent. The note not being paid the agent brought suit upon it, in his own name, claiming that the premium was charged to his account by the company, and that, on his annual settlement the note having been dishonored, the company refused to credit him with it, but insisted on his taking it, he having guaranteed its payment; that the note was transferred to him, he paying in such settlement the premium, which was the consideration of the note as between him and the company, and that by so doing the title to the note became vested in him.

The defendant claimed that the company repudiated the whole transaction, treating the policy as void, and did not transfer the note to the agent.

The court submitted the case upon these two theories, instructing the jury that if the agent's claim was correct the title to the note passed to him under the *blank* indorsement, its sufficiency to pass the title being recognized by the company, and that if the claim of the defendant was true no one would be entitled to recover on the note; which instructions are held to have been correct.

2. A condition in an insurance policy, that a note taken in settlement for a premium should not be deemed a payment of the premium, but only an extension of the time for such payment; and that if the note was not paid at maturity the company should not be liable for any loss occurring while the note was so dishonored, but the whole amount of the premium included in the note should be considered as earned, and be collectible by the company, is construed to authorize the taking of such a note, and that when so taken, and the policy delivered, it became and remained *operative* until the maturity of the note, and that, if the note was not paid when due, the operation of the policy was suspended until the note was paid, and that the delivery of such a policy to the assured was a sufficient consideration to support the note as between him and the company.

Error to Saginaw. (Edget, J.) Argued May 7, 1890. Decided May 16, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. L. Eaton,* for appellant, contended:

1. The plaintiff cannot recover unless he shows that the company had parted with its interest by indorsement; citing *Meacher v. Fort*, 3 Hill (N. C.), 227; and plaintiff must prove the indorsement and the authority to indorse; citing *Spicer v. Smith*, 23 Mich. 96.

2. The first indorsement is wholly ineffectual to enable plaintiff to recover. An agent cannot indorse his principal's name so as to pass title to himself, such an act being against public policy; citing *Englehart v. Plow Co.*, 21 Neb. 41; *Iron Mine v. Bank*, 39 Mich. 644; Story, Agency, § 210; and such an act cannot be ratified; citing *Ins. Co. v. Stoy*, 41 Mich. 396.

3. What acts on the part of the company would amount to a disaffirmance of the act of its agent is a question of law; citing *Bank v. Bank*, 1 Doug. 476.

4. The proof is positive that the company did disaffirm the agent's acts in taking the note as soon as informed of all the facts, and it could not repudiate one part of an act and ratify the other; citing *Widner v. Lane*, 14 Mich. 124; *Hutchings v. Ladd*, 16 Id. 493; *Eberts v. Selover*, 44 Id. 519.

*William E. Crane* and *James H. Davitt*, for plaintiff.

MORSE, J.     Plaintiff sued in *assumpsit*, in justice's court, upon the following note:

"71.31.              SAGINAW, MICH., October 21, 1882.
"Thirty days after date I promise to pay to the order of the Michigan Mutual Life Insurance Company seventy-one and 31-100 dollars, at the Citizens' National Bank of Saginaw, Mich., value received, with interest after maturity at the rate of 7 per cent. per annum.
                              "CHARLES TURNER."

On the back of the note is the following indorsement:
"Michigan Mut. Life Ins. Co.
                              "CHARLES F. MARSKEY, Agt."
And below is a second indorsement as follows:
"Mich. Mut. Life Ins. Co.
                              "By H. F. FREDE, Asst. Secy."

The plaintiff recovered judgment. Upon appeal to the circuit court for the county of Saginaw, a verdict was first obtained for the defendant. A new trial was granted and had, with verdict and judgment for plaintiff for

amount of note and interest. The second indorsement was made after the first trial in the circuit court.

The undisputed facts in the case are these:

June 26, 1882, the defendant made an application for insurance in the Michigan Mutual Life Insurance Company for a 10-year endowment policy upon his life for $1,000, making his wife his beneficiary in case of his death. This application was made at the instance of plaintiff, who was then the agent of the company. Upon the back of the blank filled out by defendant was a blank form to be filled out by the medical examiner. One of the conditions of this form was that the medical examiner should see that the applicant should sign the medical examination by way of identification. After defendant filled out the application, he and the plaintiff went to the examiner, and such examiner made an examination of defendant; but by mistake he had folded the application of defendant inside of one made by one Wells, and, when he filled out the blank form for defendant, he wrote it upon the back of Wells' application, and, not noticing the mistake, he and the defendant signed it. Before the application was sent to the company, plaintiff discovered the mistake. He went to the medical examiner, and had him copy into the blank form upon Turner's application the examination as written upon the Wells application, and sign it. Turner at this time was away in the woods, so plaintiff signed his (defendant's) name to the examination. He then forwarded the application to the company, stating the mistake first made, and how it had been rectified. The company replied by sending the policy to be delivered to Turner upon the payment of $71.31, the first year's premium.

Plaintiff did not see defendant again until October 18,

1882, when he informed him that he had his policy, and also of the mistake, and what had been done about it. Turner expressed some doubts about the matter, and thereupon plaintiff wrote to the company to return the application for correction, which it did. Turner then scratched out his name where plaintiff had signed it, signed it himself, and it was returned to the company with a statement of what had been done. Turner also executed the note sued upon, and received his policy. Plaintiff indorsed the note as above, and placed it in a local bank for collection, and notified the company of his action, which notice elicited no reply. Afterwards, Mr. Turner, having fears that his policy might not be valid, under the circumstances, offered to return his policy, and asked that his note be returned to him; but plaintiff refused to take the policy, or to deliver the note to defendant.

The only dispute as to the facts seems to be as to the action of the company in relation to this note, and the title of plaintiff to it. Plaintiff claims that the premium was charged to him, and that he was to be credited with the amount of the note when paid, and that he guaranteed the payment of the note to the company. That defendant refused to pay the note, and when plaintiff came to settle up his year's business with the company, the note not being collected, and past due, the company would not credit him with the note, but transferred it to him, as he had guaranteed it, and that he paid in such settlement the amount of the premium to the company, which was the consideration of the note as between him and the company, and by so doing the title of the note became vested in him.

The defendant claimed that the company repudiated the whole transaction, and did not transfer the note to plaintiff, and treated the policy as void.

The circuit judge very fairly submitted this dispute of fact to the jury. The jury were instructed that the plaintiff could recover if they found that Marskey was originally charged with the amount of the note, and that, when he sought to return it to the company, and take credit for it, the company insisted that he should remain charged with it, and that, as between the company and the assured (Turner), it should be regarded as paid, and that Marskey himself should be answerable for it, and followed that up by turning it over to him, that this would be a ratification of all that the agent had done, and a recognition that the policy was in force, that the premium had been paid, and put the ownership of the note in Marskey; but if they found that, when the paper was dishonored, it was repudiated by the company, with the intention on such company's part, because of the failure of the maker to pay the paper, not to continue the policy in force, but to discard it, and treat the whole transaction as at an end, then no one would be entitled to recover on the note.

The jury found in favor of the plaintiff's theory, and we think rightfully, from the testimony in the record.

It is further objected that the note was not admissible in evidence, not being properly indorsed to plaintiff, or, if admissible, that the testimony shows no title to the plaintiff in the note, by proper indorsement, and therefore he could not recover upon it; that the last indorsement by the assistant secretary was made too late, being after the suit was removed from justice's court to the circuit, and that he had, at best, no authority to indorse any paper except checks and drafts; that Marskey, as agent for the company, could not indorse the note over to himself, as that would be against public policy. We shall not consider the effect or the validity of the last

indorsement. The first indorsement was in blank, and, under the circumstances, was sufficient.

The judge correctly stated the law as follows:

"8. It appears in the proofs that Mr. Marskey had authority to indorse this paper when he received it, for the purposes of collection and deposit, and that in the first instance he did indorse it to a Saginaw City bank for the purpose of collection, before it matured; and the only object of the indorsement, in the first instance, was to effect that purpose. And I charge you that the indorsement as made would have no further effect than that, unless the company subsequently enlarged it by its own act.

"9. But if, as I have already said, you should find that when the note was dishonored Marskey produced it before the company's agents at Detroit, they saw the indorsement upon it, and, knowing that it was indorsed only for the purposes of deposit or of collection, nevertheless turned it over to Marskey, and charged him with it, and determined at the time that, as between the company and himself, the note should be treated as paid, and that he should be the owner of the note, then that would be sufficient to clothe him with the title. It would be a recognition by the company of the sufficiency of that indorsement to pass the title and possession to the paper, although in the first instance the indorsement was made restrictively."

It is also contended that no consideration was shown for the note as between the defendant and the insurance company, as the application and policy both provide that a failure to pay the premium when due shall avoid the policy, and that the giving of a note shall not be construed as a payment. If Turner's policy was good in his hands when he received it, and delivered the note to plaintiff, the policy was a good consideration for the note. The provisions of the policy as to the taking of notes must be construed together, and we think the circuit judge came to the right conclusion as to such construction. The testimony shows that agents were authorized

to take notes for premiums, and were in the habit of so doing, with the consent and knowledge of the company. One clause of the policy provided that—

"If the first or any subsequent premium on this policy shall be settled, wholly or in part, by note or other obligation, whether of the beneficiary, the insured, or any third party, such settlement shall not be deemed a payment, but only an extension of the time for the payment of such premium; and if such note or other obligation, or any renewal thereof, shall not be fully paid when due, then, for any loss occurring while such note or other obligation remains due and unpaid, the company shall not be liable, but the whole amount of the premium included in such note or obligation shall be considered as earned, and the company may collect the same."

The circuit judge construed this provision as authorizing the taking of notes for the first as well as other premiums, and that when a note was taken, and the policy delivered, the policy was operative until the note became due, and, if a loss occurred before the note became due by its terms, it could be collected of the company. When the note was dishonored, the operation of the policy was suspended until it was paid, and a loss occurring while the note was past due and unpaid would not be collectible. Under this ruling, it follows that the policy in defendant's hands was good until the note was dishonored by non-payment, and its delivery to defendant was a sufficient consideration to support the note as between him and the company.

We find no errors as to admission of testimony, or in the charge of the court. The judgment is therefore affirmed, with costs.

The other Justices concurred.